NELSON ALVORD, Plaintiff in Error, *v.* LAUREN N. ASHLEY, Defendant in Error.

ERROR TO LASALLE.

A highway may be established and proved by prescription, by dedication, and by laying out the same as directed by statute.

The public is an ever existing body, capable of taking as grantee for public uses; and its interests are a sufficient consideration to support the grant, which may be manifested by express or implied consent, from acquiescence in the user; and the user does not depend upon any fixed period of time.

The dedication is a mixed question of law and fact, as also the quantity of land included by it, to be submitted to the jury.

The actual use and repairing of a highway by the public, is evidence of its acceptance for such purpose.

A party will be estopped from denying a dedication, by the acquiescence in it of his grantors.

The jury may infer and find the width of a road, or a dedication of so much of it as was actually used.

THIS was an action of trespass, *quare clausam.*

First plea, general issue. Second plea, public highway and supposed trespass within its limits. First replication to second plea, no highway. Second replication to second plea, trespass not in the highway. Issue found for plaintiff. Motion for new trial overruled, and judgment.

Plaintiff's title to the close, and that the defendant took down the fence and drove across it from north-east to south-west, was proved.

The plaintiff requested the court to instruct the jury as follows:

1st. If the jury believe from the evidence that the defendant

broke and entered the quarter section mentioned in the declaration, and that the said quarter section was owned by or in possession of the plaintiff at the time of such breaking or entry, then the jury should find the defendant guilty, unless the defendant has shown by proof that there was a public highway legally established and laid out across said quarter section, and that the defendant, in entering and passing across said quarter section, was all the time within the said road.

2nd. The burden of proving a highway, rests upon the defendant, after it is shown that he broke and entered the close; and it is also necessary to show by proof that the defendant in such case did not depart from the limits of said road while in said close.

3rd. A right of way across lands can only be acquired in three ways: 1st, by prescription; 2nd, by dedication; and 3rd, by laying out in the manner prescribed by law.

4th. In order to create a right of way by prescription, it must be shown by proof that the road claimed by prescription has been used for twenty years uninterruptedly, adversely and continuously under color of right, and that the owner of the land for twenty years has acquiesced in such use; such owner being in a position to object if he saw proper.

5th. Before the jury can find that the supposed roads, or any of them, exist, by dedication, they must believe from the evidence that the United States, while they owned the land through which the supposed roads passed, or the plaintiff since he has owned the land, intended to set apart and did set apart the ground over which said supposed roads run, for the use of the public for a highway; and that the public accepted the same for a highway by some public authority authorized to accept it.

6th. The mere act of making a fence along one side of the traveled track, by the plaintiff, when he owned the land on both sides of the traveled track, is not alone evidence of an intention to dedicate the land to the public for a road.

7th. If it is proved in the case that the plaintiff, soon after he purchased the land in question, notified the supervisor of roads that he did not acquiesce in the road running through said land, and forbid said supervisor from doing work on said road, and fenced up a part or the whole of the said road, and ploughed up the traveled track, these are circumstances tending to rebut any presumption of an intention to dedicate the road to the public.

8th. It is not competent for other persons along the line of travel to accept the road for the public, even if it was dedicated by the plaintiff; the only way in which an acceptance can be made binding upon the plaintiff, is, that such acceptance

should be made by the County Commissioners' Court, or the County Court, or the commissioners of highways, of the town in which the road lies.

9th.   A mere permission of the owner of the land for the public to pass across the land, will never ripen into a prescriptive right of way; but such permission is only a *license*, and may be revoked at any time by the owner of the land.

10th.   The facts, that a public road has been used, traveled upon, worked upon, and recognized by, the public authorities, do never of themselves, establish a legal public highway.   Proof of these facts merely furnish a presumption, that such is a regular highway, but these circumstances only furnish a legal presumption, which may be rebutted by the records, showing that such public road was not laid out in pursuance of the law.

11th.   Although it is not necessary, in the first instance, for the defendant, in order to prove the existence of a public highway, to prove it by the records of the County Commissioners' Court, but the defendant may prove that the road was used and traveled upon by the public, and was recognized by the public authorities as a public road, and was worked by the supervisor, and this would be sufficient, *prima facie*, to establish a public road; yet when the records of the County Commissioners' Court are introduced by the plaintiff, which show a failure on the part of said court to comply with the provisions and requirements of the statute, then the presumption of the regularity of the proceedings, arising from such use, travel and work by the public, is rebutted, and the defendant is then bound to show that the statute has been complied with, in every essential particular necessary to make it a valid road, under the law.

12th.   A public highway laid out under the law in force in 1845, whose width is not defined and named on the record, is void.   In 1845 the law required the County Commissioners' Court to establish the width of the road *upon the record;* and if the jury believe from the evidence, that in 1845, the County Commissioners' Court, upon the report of Alvord and Elliott, failed or omitted to fix the width on the record, of the road said viewers recommended, this omission is fatal to the legal existence of that road.

13th.   Unless it is shown by proof that the road viewed and staked by Hawes, Roberts and Easterbrook, had a fixed, a determined width, such road is void.

14th.   The commissioners of highways of the town of Eden had a right by law to ascertain, describe and enter of record the location of the road viewed and staked by Hawes, Roberts and Easterbrook, in 1830, if said road was not sufficiently described; and unless the proof shows that the place where

defendant broke and entered was within the limits of said road, as actually established, *that* road affords no justification to defendant for such breaking and entry.

15th. Under the law that was in force in 1845, when the County Commissioners' Court made the orders read in evidence, the County Commissioners' Court had full power to vacate, upon petition in conformity to law, any State or county road in the county; and if the jury believe from the evidence that said court in pursuance of a legal petition made an order vacating the roads across the land in controversy in the suit, then the roads so vacated would constitute no justification to defendant for entering upon the land.

16th. Private property cannot be taken for public purposes without just compensation, or a waiver of such compensation.

17th. No acts of other persons along the same line of travel, in fencing or building, can make such an acceptance of the roads as would bind Ashley; nor can such acts prove a dedication on the part of Ashley.

18th. In order to create a right of way either by prescription or dedication, the proof must show a continuous and uninterrupted use of the same traveled track; and evidence of travel sometimes in one track and sometimes in another track, such tracks being several rods apart, and sometimes one being used, sometimes another, such evidence does not show either prescription or dedication.

19th. A right of way cannot be acquired by prescription as against the United States, over land owned by them.

20th. A right of way by dedication cannot be created without some act or acts and declarations by the owner of the land showing an intention to dedicate the ground for a public highway, *and* an *acceptance* thereof by public authority empowered by law to accept of such dedication.

The court gave all but the 8th, 13th and 19th, which were refused. To the giving said instructions and each of them, defendant objected. Objection overruled.

At the request of the defendant the court gave the following instructions:

1st. If the trespass alleged in the declaration consisted only in the defendant's driving his wagon and horses across the land described in the declaration in a highway or public road, and in taking down fences which had been erected across the said highway or road, they should find for the defendant.

2nd. If the jury believe from the evidence that there was a road used by the public generally for the purpose of public travel across the land of the plaintiff, and if said plaintiff permitted the public to use said road for such a length of time

that the public accommodation and private rights would be materially affected by an interruption of the enjoyment, he could not legally fence the same up, and prevent the further use of it by the public.

3rd. That if the minutes of survey do not show a road to be located in the place where it was actually staked and laid out, still, the staking and laying out must control in determining its location.

4th. It is not necessary to prove the location of a public road by the minutes of survey or other written evidence, but the same may be proved by persons who were along and assisted in the location of the road, and saw the stakes, if any, set, and the place where the road was actually staked out, is the place of the road.

5th. The owner of land through which a road is about to be located, must in the first instance and as soon as the fact comes to his knowledge, object to its location across his land. If he acquiesces in the location, opening and using it by the public, he thereby waives his claim for damages, and cannot afterwards shut up the road because his damages were not paid.

6th. That if two of the viewers appointed by the County Commissioners' Court actually located and staked the centre line of a public highway across the land of the plaintiff described in declaration, and if said road so located was accepted, actually worked by the public authorities, and used by the public (with the assent of the plaintiff) for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment thereof, then such assent and acceptance amounted to a dedication to the public of the use of said road, and said plaintiff, after such dedication, had no right to fence the same up and prevent the further use of it by the public. And although the county commissioners may not have established any width, yet, in determining the location and width of the road dedicated, the jury may consider all the facts proved in the case, the ranging of the line of fences on the road, the distance of said roads apart, the acts of the plaintiff in fencing along the north line of the road, if these things are proved and all other facts which tend to show an intention on the part of the plaintiff to give the public the road through his land.

7th. If the centre line of a road was surveyed and located as mentioned in the last instruction, and if the plaintiff intending to dedicate to the public for a road a strip across said quarter section in the declaration mentioned, of the width of two rods on each side of the centre line, and if while intending to inclose a field on the north side of the road so that the south

line of the fence of the inclosure should be north of, parallel to, and two rods distant from, the said centre line of said road, he did inclose said field, and by mistake or inaccuracy extended his fences on the east and west so far south, that said south line of fence either diagonally crossed the surveyed and located road or was a little south of the surveyed and located road, then the facts which would amount to a dedication of a strip four rods wide south of the fence, if it had been placed where plaintiff intended to place it, would amount to a dedication of a strip four rods wide south of the fence as it actually was, as long as the plaintiff permitted his fence to remain where he had thus by mistake or inaccuracy placed it, and while said fence so remained, the public would have the right to travel along the south line of said fence and within four rods of it, although travelers might thereby pass over the land of the plaintiff which was south of the limits of the road.

Each of said instructions for the defendant were given by the court.

Verdict for plaintiff. Motion for a new trial overruled, and exception taken. The cause was tried by HOLLISTER, Judge, and a jury.

GLOVER and COOK, and LELAND and LELAND, for Plaintiff in Error.

W. H. L. WALLACE, for Defendant in Error.

SCATES, C. J. We propose only to examine the instructions given for defendant, as errors apparent therein are sufficient to reverse this judgment.

The court very properly instructed the jury that a highway could be established and proven by prescription, by dedication, and by laying out the same in the manner provided by the statutes. 2 Greenl. Ev., Sec. 662.

Prescription for private rights and easements in the lands of others were, by the earlier decisions upon the old common law, made, time whereof the memory runneth not to the contrary. But gradually they began to conform to a fixed period of years, which would bar a writ or action for the assertion of title, (see Angell on Lim. 2, 3, and notes,) in analogy to the statutes of limitation, and which was subsequently adopted as the rule in England by statute 2 and 3 William IV, Cap. 21. Prescription on twenty years' possession had become a fixed principle under the statute of limitations. 21 Jas. I, id., p. 3 and note 2. For though not so in name, it was so in effect, as a bar of any action for the assertion and maintenance of the right.

The date for legal memory was first fixed from remarkable periods, and then by statute, West 1, (3 Edw. I,) Cap. 39, from 6th July, 1189, the first day of Edward I's reign; by 32 Henry VIII, Cap. 2, it was shortened to sixty years, and to twenty years by 21 James I, Cap. 16; and distinctly recognized as a prescriptive right by 2 and 3 William IV, CC. 71 and 100. Best on Presump. 87 to 100, (22 Law Lib. 68, &c.;) Mathews on Presump. Ev. 309, 310; 2 Greenleaf Ev. Sec. 662; Ang. on Lim., pp. 11 to 14. So we make prescription in effect correlative with the bar of a real action to recover the land, or of a right of entry upon it. I will not here discuss what effect the shorter periods of limitation may have in reducing this period of prescriptive right by analogy.

We come to the question of dedication.

We have said in *Warren* v. *The Trustees of Jacksonville*, 15 Ill. R. 240, that dedications that may be made without writing, are not within the statute of frauds; that the public community is an ever existing body, capable of becoming and taking as grantee for public uses, and its interests are a sufficient consideration to support the grant. The mode is immaterial; the real thing is the grant or dedication which may be manifested by express or implied consent, from acquiescence in the user. And these positions are, we think, abundantly sustained by the authorities referred to; and it does not depend upon any fixed period of time,—2 Greenleaf Ev., Sec. 662, and notes,—but is a mixed question of law and fact, and the particular circumstances of each case will be submitted to the jury, not only of the dedication, but of the extent or quantity of land embraced in it. The voluntary use of a way by the public, with the assent of the owner of the soil, may not of itself be sufficient to make it a public highway, and impose upon the proper public authorities the duty of repair; but when these are connected with proof of its actual recognition and repair by the proper public authorities, the whole facts should go to the jury, from which they might be warranted in finding from such use, by the public, acquiescence of the owner, and recognition and repair by the proper authorities, that the way is a public highway in the full sense of that term. The fifth instruction is not in conformity to these principles. It contemplates an affirmative act or declaration of a more formal and solemn character than is essential; for mere acquiescence in its known and avowed use and repair as a highway by the public and public authorities, may justify the inference under circumstances, and its actual use and repair will be evidence of its acceptance for such purposes.

The sixth instruction would exclude an act of the owner as

24

evidence when taken alone, which we think is a proper fact to go to the jury.

The seventh instruction is too broad. Had it been confined to the defendant alone in its conclusion of rebuttal, and excluded any other acts or declarations of his than those recited, it might be correct. But he must be estopped by the acquiescence of his grantors, (even though it be the government, *Dimon* v. *The People*, 17 Ill. R., *post*,) in which case the act recited could only repel the presumption from his own act.

Whether " mere permission of the owner of the land for the public to pass across it," amounts only to a " license, and may be revoked," is not a question of law in itself, but a fact, which, with the accompanying circumstances in this case of a recognition and repairing it by public authorities, should have been left to the jury.

The ninth instruction is erroneous.

The eighteenth is contrary to the principles laid down in *Sprague* v. *Waite*, 17 Pick. R. 315, 316, and *Hannum et al.* v. *The Inhab. of Belchertown*, 19 Pick. R. 313.

The twentieth is obnoxious to the same remarks and principles laid down in respect to the fifth.

The twelfth instruction would make the fixing of a width to the road an essential element of the validity of their order establishing it. And so I should treat it upon direct appeal from that order, as I have shown in *Morgan* v. *Green*, 17 Ill. R., *post*. But these proceedings are here collaterally attacked, and after a use and repair by the public of some twenty-three years. The viewing and laying this road is cumulative, as is also that of a township road. The jury may infer and find a width; they may infer and find a dedication of so much as was actually used, even extending to double tracks, as in 17 and 19 Pickering, and the court will intend that it was of the usual width fixed by law. *Lawton* v. *Commissioners of Cambridge*, 2 Caine R. 183.

By act of 1827, Rev. Law 1833, p. 542, Sec. 12, roads were to be not less than thirty nor more than fifty feet wide, and this was the law in 1830, when this road was viewed.

The act of 1845, Rev. Stat. p. 487, Sec. 33, fixed a maximum and minimum width for roads at sixty-six and thirty feet, within which the County Court was authorized to vary different roads. I should not declare the location and establishment of the road void for an omission to enter for it a width when collaterally assailed, but would intend it to be not less than thirty feet.

Proof by plaintiff that he entered the close, and left it on and within the limits of the highway, might warrant the jury

in inferences that he had not departed from it in crossing the close.

The first and second instruction would restrain and forbid the jury from drawing legitimate conclusions as inferences from facts in evidence.

We need not comment upon the evidence ; the cause should be submitted to another trial.

Judgment reversed and cause remanded.

*Judgment reversed.*